No. 25-3918

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

RUMBLE, INC.,
*Plaintiff-Appellant,*

*v.*

GOOGLE LLC,
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 4:21-CV-00229-HSG
HON. HAYWOOD S. GILLIAM, JR.

## BRIEF OF APPELLEE GOOGLE LLC

JOHN E. SCHMIDTLEIN
STEPHEN J. FUZESI
JESSE T. CLAY
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*(202) 434-5000*
*jschmidtlein@wc.com*

COUNSEL FOR APPELLEE GOOGLE LLC

## CORPORATE DISCLOSURE STATEMENT

Google LLC filed its Rule 26.1 Disclosure Statement on July 8, 2025, at

docket number 8.1.

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT...........................................................1

STATUTORY PROVISION INVOLVED....................................................1

ISSUE PRESENTED...............................................................................2

STATEMENT OF THE CASE ..................................................................2

    A.    Rumble's Claim ........................................................2

    B.    Discovery........................................................................3

    C.    Summary Judgment Motion .........................................5

    D.    The District Court's Ruling ..........................................7

SUMMARY OF ARGUMENT..................................................................9

STANDARD OF REVIEW .....................................................................11

ARGUMENT .........................................................................................12

I.    Rumble Had a Full and Fair Opportunity to Oppose Summary Judgment on Statute of Limitations ........................................12

II.    The District Court Properly Concluded that Rumble's Claim Was Time Barred Unless Rumble Demonstrated a Triable Issue on an Exception to the Statute of Limitations ...............................................14

    A.    The District Court Applied the Correct Summary Judgment Standard ........................................................15

    B.    Under Its Own Theory of the Case, Rumble's Claim Accrued More Than Four Years Before It Filed Suit .................................16

    C.    Rumble Waived Its New Accrual Argument .................................19

    D.    The District Court's Accrual Analysis Was Correct.....................20

III.    The District Court Properly Concluded that Rumble Failed to Adduce Evidence Establishing a "Continuing Violation" Exception.................23

    A.    Rumble Failed to Present Any Evidence of a "Continuing Violation" in Its Summary Judgment Opposition .........................24

i

B.    Rumble's Belated Continuing Violation Arguments Are Improper and Likewise Fail to Meet Its Summary Judgment Burden ................................................................................26

      1.    Rumble Waived Its Arguments .............................................27

      2.    Rumble's New Assertions Fail to Create a Triable Issue ....................................................................................28

IV.    The District Court Properly Concluded that Rumble May Not Assert "Fraudulent Concealment" and Failed to Adduce Evidence Meeting the Standard In Any Event ....................................................45

    A.    Because Rumble Failed to Plead "Fraudulent Concealment," It May Not Rely on that Exception to Defeat Summary Judgment ................................................................................46

    B.    In the Alternative, Rumble Failed to Establish a Triable Issue ................................................................................50

      1.    The District Court Properly Applied the Fraudulent Concealment Standard ...........................................51

      2.    There Is No Evidence that Google "Affirmatively Misled" Rumble ................................................................53

      3.    Rumble Also Failed to Present Evidence of a Triable Issue on the Second Element of Fraudulent Concealment .........60

CONCLUSION ....................................................................................62

# TABLE OF AUTHORITIES

Page

## CASES

*389 Orange St. Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999) .............46, 49

*Abogados v. AT&T, Inc.*, 223 F.3d 932 (9th Cir. 2000).......................47

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016)......36

*Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184 (9th Cir. 1984) .................10, 16, 21

*AMF, Inc. v. Gen. Motors Corp.*, 591 F.2d 68 (9th Cir. 1979) ................*passim*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..........................25, 28, 44

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003) (per curiam) ......................................52

*Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*,
289 F.3d 589 (9th Cir. 2002)...............................................................27

*Beneficial Std. Life Ins. Co. v. Madariaga*, 851 F.2d 271 (9th Cir. 1988).......16

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)..............................................................................21

*Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026 (9th Cir. 2001)..........*passim*

*Cass, Inc. v. Prod. Pattern & Foundry Co.*,
2017 WL 1128597 (D. Nev. Mar. 23, 2017)......................................49

*Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*,
111 F.3d 1427 (9th Cir. 1996)............................................................45

*Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117 (9th Cir. 1980) ..........47, 49

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
858 F.2d 499 (9th Cir. 1988)...........................................................*passim*

*David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936 (9th Cir. 1981) ...32, 33

iii

Page

Cases—continued:

*Eichman v. Fotomat Corp.*, 880 F.2d 149 (9th Cir. 1989) .................................43

*Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409 (9th Cir. 1988) ...................28

*Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044 (N.D. Cal. 2016)..............58, 59

*Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996)..............................46, 49, 57, 61

*Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009) .........49

*Handa v. Clark*, 401 F.3d 1129 (9th Cir. 2005).................................13, 19, 26, 27

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968)............44

*Hawthorne Hangar Ops., L.P. v. Hawthorne Airport, LLC*,
2022 WL 3102452 (9th Cir. Aug. 4, 2022) ........................................................21

*Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*,
679 F.2d 803 (9th Cir. 1982) (per curiam) .................................................13, 14

*Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir. 1986)......33

*Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107 (9th Cir. 2003) ............25, 43

*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055 (9th Cir. 2012)........15, 31

*Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116 (9th Cir. 2006).....................60

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997)..........................................................................22

*In re Beverly Hills Bancorp*, 752 F.2d 1334 (9th Cir. 1984)............................50

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996)...................................................28

*King v. Navy Fed. Credit Union*, 148 F.4th 628 (9th Cir. 2025)...............13, 19

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)........................................*passim*

*LaSalvia v. United Dairymen*, 804 F.2d 1113 (9th Cir. 1986) ........................30

Page

Cases—continued:

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009)...........11, 26, 27

*Margaritis v. BAC Home Loans Servicing LP*,
   579 F. App'x 574 (9th Cir. 2014)....................................................48

*McKnight v. Hinojosa*, 54 F.4th 1069 (9th Cir. 2022) ...........................*passim*

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012)...........................................33

*NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378 (9th Cir. 1979)...............15

*Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014)...........................30

*Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234 (9th Cir. 1987) ..........*passim*

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*,
   699 F.2d 1292 (9th Cir. 1983).......................................................45

*Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*,
   2022 WL 595696 (9th Cir. Feb. 28, 2022) .....................................21

*Rivera v. Anaya*, 726 F.2d 564 (9th Cir. 1984).............................13, 14

*Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892 (9th Cir. 2013)..............47, 48

*Rutledge v. Bos. Woven Hose & Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978).....................................................*passim*

*Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868 (N.D. Cal. 2015)...........43, 58, 59

*Samsung Electronics Co. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014).....................................................44

*SaurikIT, LLC v. Apple, Inc.*, 2023 WL 8946200 (9th Cir. Dec. 28, 2023)......43

*Smith v. City of Medford*, 2025 WL 1077358 (9th Cir. Apr. 10, 2025).............25

Page

Cases—continued:

*Staley v. Gilead Sciences, Inc.*,
2021 WL 4972628 (N.D. Cal. Mar. 12, 2021)....................................47

*Thorman v. Am. Seafoods Co.*, 421 F.3d 1090 (9th Cir. 2005)..............51, 52, 54

*United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024) ......................40

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)........................................22

*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) ........27

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006)...................................................................*passim*

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971) .................22

## STATUTES AND RULES

15 U.S.C. § 15b ......................................................................................1, 6, 16

28 U.S.C. § 1291 ..............................................................................................1

Fed. R. Civ. P.
8.................................................................................................................48
9.................................................................................................................48
12...............................................................................................................48
15...............................................................................................................50
56.................................................................................................15, 25, 28

## INTRODUCTION

This appeal concerns the straightforward application of a statute of limitations to facts that were undisputed for purposes of resolving Google's motion for summary judgment. Based on Rumble's own theory of the case, Rumble filed its lawsuit *years* too late. On appeal, Rumble now asserts for the first time a series of arguments that it waived below. Not only are these belated arguments no basis for reversing the district court's ruling, but they lack merit on their own terms. The district court based its well-reasoned opinion on well-established law and this Court should affirm.

## JURISDICTIONAL STATEMENT

On May 21, 2025, the United States District Court for the Northern District of California (Hon. Haywood S. Gilliam, Jr.) granted summary judgment and entered judgment for Google. 1-ER-2; 1-ER-3–22. Rumble filed a notice of appeal on June 18, 2025. 6-ER-1236–42. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATUTORY PROVISION INVOLVED

This appeal involves the statute of limitations for private federal antitrust actions, 15 U.S.C. § 15b, which provides in relevant part:

"Any action to enforce any cause of action under section 15, 15a, or 15c

1

of this title shall be forever barred unless commenced within four years after the cause of action accrued."

## ISSUE PRESENTED

Whether the district court properly granted summary judgment because Rumble's claim was time barred.

## STATEMENT OF THE CASE

### A. Rumble's Claim

Rumble, an online video platform that positions itself as a competitor to YouTube, was founded in 2013. Br. 11. It filed this antitrust lawsuit against Google on January 11, 2021. 6-ER-1137–74.

As set out in Rumble's Amended Complaint, Rumble asserted a single claim for alleged monopolization and attempted monopolization of a purported online video platform market in the United States, under Section 2 of the Sherman Act. 6-ER-1117–18. The core of Rumble's claim was the contention that Google had allegedly "rig[ged] its search algorithms" to rank videos hosted on YouTube higher in Google search results than videos hosted on Rumble and on other platforms' websites. 6-ER-1050, 1117–18, at ¶ 3, 194. Because Google owns YouTube, Rumble called this alleged practice "self-preferencing." 6-ER-1052, at ¶ 9. Rumble additionally asserted as part of its

claim that Google had entered into "exclusionary" contracts that purportedly prevented Rumble from being preinstalled as an application on certain Android mobile devices by "requiring pre-installation and prominent placement of Google's YouTube apps on all Android smartphones in the United States." 6-ER-1117–18, at ¶ 194.

Despite filing its lawsuit in January 2021, Rumble's Amended Complaint alleged that Rumble suffered damages based on Google's purportedly anticompetitive conduct dating back to at least April 2014. 6-ER-1113–14, at ¶¶ 177–80; *see also* 6-ER-1115, at ¶ 185 (alleging "[s]ince 2013" that "Rumble lost [users] to YouTube due to Google's anticompetitive and monopolist behavior and self-preferencing").

When Google served its Answer to Rumble's Amended Complaint, among the defenses that Google asserted was that Rumble's claim was time barred based on the applicable statute of limitations. 5-ER-998.

## B.    Discovery

The litigation proceeded to discovery, during which Rumble made clear its theory of the case that Google had engaged in an unbroken practice of self-preferencing YouTube in search results and entering into exclusionary contracts since the time of Rumble's founding—if not before.

3

During his deposition, Rumble's Chief Executive Officer, Chris Pavlovski, asserted that he personally observed search traffic to YouTube's competitors dry up "[b]y 2007" following Google's acquisition of YouTube. SER-11–12.  According to Pavlovski, "basically all the search traffic stopped coming to all the different websites of my friends that I know, including me[.]" SER-11–12.  He further alleged that "[b]y 2013, [when he] started Rumble . . . immediately the same issue appeared."  SER-11–12.  In its interrogatory responses, Rumble likewise maintained that the provisions in Google's Android agreements that Rumble alleged were anticompetitive have been in place "[s]ince at least 2011."  9-ER-1769, 1784.

Rumble subsequently served a damages expert report opining that Rumble had suffered injuries from Google's alleged conduct starting in *2014* and continuing through 2024.  10-ER-2054 ("I have calculated damages for the period from April 2014 through the present (the 'Damages Period')."); *see id.* n.4 ("My damages estimate begins in April 2014 . . . .").  For each year during that period, Rumble's expert estimated alleged damages suffered by Rumble in the form of lost profits that purportedly would have been realized but for Google's alleged conduct.  10-ER-2064.  This included more than $12 million in alleged lost profits attributed specifically to years 2014, 2015, and 2016—all

more than four years before Rumble filed suit. *See* 10-ER-2064. Rumble further served another expert report asserting that Google's alleged anticompetitive conduct began "in 2013 and even earlier." 9-ER-1699–700, 1702–03.

### C.    Summary Judgment Motion

At the conclusion of discovery, Google moved for summary judgment on multiple independent grounds. Google explained that, even assuming *arguendo* that purported self-preferencing was a cognizable theory of antitrust liability, Rumble had failed to adduce evidence that Google engaged in any such practice when ranking videos in search results. 10-ER-1975–81. Rather, the evidence showed that Google treated YouTube and other platforms the same in Google Search rankings. 10-ER-1972–74. Google explained that there also was no triable issue of "exclusionary" preinstallation of the YouTube application on Android devices. 10-ER-1982–87. Additionally, Google argued that Rumble could not establish anticompetitive effects from Google's alleged conduct—including that Rumble was substantially foreclosed from any relevant market by Google's purportedly anticompetitive conduct. 10-ER-1987–93.

Google further argued that Rumble's claim failed for the "equally fundamental[]" reason that it was barred by the governing four-year statute of limitations under federal law, 15 U.S.C. § 15b. 10-ER-1964–65. Devoting a section of its brief to the argument, Google explained how "[u]nder Rumble's own theory of the case, Rumble filed its Complaint more than four years after its cause of action allegedly accrued." 10-ER-1993–95.

Rumble opposed the statute of limitations argument by primarily asserting (without legal support) that Google could not raise a statute of limitations defense at the summary judgment stage because it had not filed a motion to dismiss on the issue, and that a discovery rule applied to the determination of when the statute begins to run. 8-ER-1514–15. Rumble did not argue "fraudulent concealment," and it referenced the "continuing violation" exception in only one conclusory sentence. 8-ER-1514–15.

In reply, Google explained that Rumble's statute of limitations response rested principally on misstatements of law. 8-ER-1419–21. (Notably Rumble does not continue to press its primary arguments on appeal.) If anything, Google noted, Rumble's opposition only doubled down on its position that the alleged conduct at issue went "back years—from the time that Rumble was

formed in 2013" and, even earlier, "from the time that Google acquired YouTube in 2006." 8-ER-1419–21; *see* 8-ER-1515.

The district court then heard oral argument, devoting a substantial portion of the hearing to the statute of limitations issue because "it's the threshold gating issue to whether any of this goes forward." 6-ER-1205. In response to the court's questioning, Rumble's counsel conceded that there is no "discovery rule" applicable to the statute of limitations for antitrust claims. 6-ER-1206. Rumble's counsel also raised "fraudulent concealment" for the first time and conceded that Rumble had not pleaded fraudulent concealment in its Complaint. 6-ER-1206. And with respect to a purported "continuing violation" exception to the statute of limitations, Rumble's counsel did not identify any specific evidence in support of Rumble's assertion.

## D. The District Court's Ruling

In a 20-page opinion, the district court granted summary judgment in Google's favor based on its statute of limitations defense. 1-ER-3–22. The court did not reach the other summary judgment arguments raised by Google.

The district court first held that Rumble's claim accrued as early as 2014, based on Rumble's own allegations and calculation of damages dating back to that period. 1-ER-8. As a result, the court concluded that Rumble's claim was

7

untimely unless Rumble could demonstrate there was a triable issue as to an exception to the statute of limitations. 1-ER-8.

As to fraudulent concealment, the court explained that because Rumble failed to plead tolling based on fraudulent concealment, it could not rely on that theory to defeat summary judgment under Ninth Circuit precedent. 1-ER-8–9 (citing, *inter alia*, *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991–92 (9th Cir. 2006)). The district court further held that Rumble nevertheless failed to establish a genuine issue of material fact as to (at least) the first element of fraudulent concealment: whether the defendant "affirmatively misled" the plaintiff. 1-ER-10–13.

As to Rumble's assertion of a continuing violation, the district court noted that Rumble's "argument that the continuing violation exception applies totals one cursory sentence." 1-ER-13. As such, Rumble had failed to identify any specific facts creating a triable issue on the continuing violation issue. "As a matter of law," the court concluded, "this showing is inadequate to preclude summary judgment." 1-ER-13–14. The district court then went on to address arguments Rumble raised for the first time at oral argument, finding them wholly lacking evidentiary support as well. 1-ER-15–18. In short, the court

concluded that Rumble "had ample opportunity to support its conclusory arguments with specific facts and record evidence, but it did not." 1-ER-18.

Because Rumble failed to demonstrate a triable issue as to any exception to the statute of limitations, the district court granted summary judgment and entered judgment for Google. 1-ER-22; 1-ER-2. This appeal then followed.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's grant of summary judgment.

1. Rumble had a full and fair opportunity to oppose summary judgment on Google's statute of limitations defense that was first raised in its Answer. Rumble repeatedly mischaracterizes the record below in suggesting that the statute of limitations was decided "sua sponte." *E.g.*, Br. 6. Google squarely raised the issue in its opening brief, and Rumble failed to marshal evidence in opposition to this defense because it has none. There was nothing remotely improper about the district court's consideration of the untimeliness of Rumble's claim.

2. Under Rumble's own theory of the case, its claim was time barred unless Rumble could demonstrate that an exception applied to the statute of limitations. Rumble's attempt to now contradict its own theory of the case by

contesting that its claim accrued long ago was not only waived below but is meritless. Under settled law, a private antitrust "cause of action accrues when a defendant commits an act that injures the plaintiff." *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1189–90 (9th Cir. 1984). Here Rumble's Complaint pleaded that it was damaged as far back as at least 2014. 6-ER-1113–15. And Rumble's damages expert report specifically identified injuries that Google purportedly caused to Rumble dating to 2014—meaning that the statute of limitations expired *more than three years* before Rumble brought suit unless an exception applied. 10-ER-2054, 2064.

3. Rumble's invocation of the "continuing violation" exception is unavailing. As a threshold matter, Rumble waived the arguments that it now presses on appeal because it failed to raise them below. Rumble did no more than reference this doctrine in one conclusory sentence in its summary judgment opposition. 8-ER-1515. That alone requires affirmance. Moreover, the arguments it now asserts lack merit. For the continuing violation doctrine to apply, there must be a "new and independent act that is not merely a reaffirmation of a previous act," which "must inflict new and accumulating injury." *Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234, 237–38 (9th Cir.

1987).  Rumble failed to point to any evidence in the record below that could satisfy that test.

4.    Finally, Rumble's assertion of "fraudulent concealment" also does not establish a triable issue.  As the district court held, it is well-established that Rumble cannot rely on fraudulent concealment because it failed to plead the doctrine in its Complaint.  This Court repeatedly has held as much.  *See, e.g.*, *Wasco Prods.*, 435 F.3d at 991.  That is dispositive.  Rumble's fraudulent concealment argument also fails on the merits because Rumble did not demonstrate a triable issue on *any* of the required elements of fraudulent concealment.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*.  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).  But the Court will not consider arguments raised for the first time on appeal absent extraordinary circumstances not present here.  *See, e.g.*, *McKnight v. Hinojosa*, 54 F.4th 1069, 1078 n.2 (9th Cir. 2022).  And any evidence purportedly establishing a triable issue must not only have been in the record below, but specifically brought to the district court's attention in opposing summary judgment. *See, e.g.*, *Carmen*, 237 F.3d at 1030; *LVRC Holdings LLC*

11

*v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (requiring the appellant to have "identified the evidence establishing a genuine issue of material fact in its opposition to summary judgment").

## ARGUMENT

### I. Rumble Had a Full and Fair Opportunity to Oppose Summary Judgment on Statute of Limitations.

As an initial matter, it is baseless for Rumble to repeatedly suggest that the district court decided the statute of limitations issue "sua sponte" or that Rumble was somehow treated unfairly at summary judgment.

As Rumble concedes, Br. 14, Google raised the statute of limitations as a defense in its Answer. 5-ER-998. Following fact and expert discovery—during which Rumble confirmed its theory of the case—Google moved for summary judgment and included the statute of limitations as one of multiple independent reasons why judgment should be granted. From the start of its opening brief, Google noted that the statute of limitations was an "equally fundamental[]" basis on which Rumble's claim failed. 10-ER-1964–65. Google then devoted a section of its summary judgment brief to explaining exactly why Rumble's claim was time barred. 10-ER-1993–95. Rumble had a full opportunity to respond in its opposition.

Rumble's assertion that the district court was to blame—for purportedly "failing to give Rumble an opportunity to demonstrate" how Google's invocation of statute of limitations at summary judgment "prejudiced Rumble," Br. 65—is baseless. Rumble could have made any argument it wished in response to Google's motion for summary judgment. Nothing prevented Rumble from arguing "prejudice" or any other point. But it did not. Rumble thus waived any such argument by not raising it in the district court. *See, e.g.*, *King v. Navy Fed. Credit Union*, 148 F.4th 628, 634 n.5 (9th Cir. 2025) (finding appellant had "waived [his] argument by failing to raise it before the district court"); *McKnight*, 54 F.4th at 1078 n.2 (same); *Handa v. Clark*, 401 F.3d 1129, 1132 (9th Cir. 2005) ("[A] party cannot treat the district court as a mere ill-placed bunker to be circumvented on his way to this court where he will actually engage his opponents.").

Further, Rumble suffered no "prejudice" by the district court considering Google's statute of limitations defense. Rumble misconstrues inapposite cases addressing circumstances where defendants moved for summary judgment on defenses that they *failed* to include in their answers and, thus, courts considered potential prejudice. *See Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984); *Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*,

679 F.2d 803, 804 (9th Cir. 1982) (per curiam). Here, it is *undisputed* that Google *included* the statute of limitations defense in its Answer. And even where the defendants failed to include defenses in their answers in Rumble's cited cases, this Court *upheld* the district courts' rulings based on those defenses, as the opposing parties had the opportunity to contest the issue on summary judgment. *Rivera*, 726 F.2d at 566; *Healy Tibbitts Constr. Co.*, 679 F.2d at 804. There is no question that Rumble had that chance here. Even now on appeal, Rumble nowhere explains what the supposed "prejudice" was that it suffered—because there was none.

In short, Rumble had a full and fair opportunity to oppose summary judgment on Google's statute of limitations defense below.

## II. The District Court Properly Concluded that Rumble's Claim Was Time Barred Unless Rumble Demonstrated a Triable Issue on an Exception to the Statute of Limitations.

The district court correctly held that Rumble's claim was time barred, unless Rumble could demonstrate a triable issue existed as to tolling or restarting the statute of limitations. Rumble's argument on appeal that its claim did not "accrue" more than four years before it filed suit is meritless. Its claim clearly did, based on Rumble's own theory of the case. And Rumble waived its new-found contention in any event by not raising it below.

### A. The District Court Applied the Correct Summary Judgment Standard.

As a threshold matter, the district court indisputably applied the correct, well-known summary judgment standard when considering the application of the statute of limitations. Rumble's assertion at various points in its brief that the court "reversed the Rule 56 burden," *e.g.*, Br. 21, is wrong.

The district court was clear that "[a]s the moving party, Defendant bears the burden of showing that there is no genuine dispute of material fact as to whether Plaintiff's claim accrued more than four years ago." 1-ER-7. The court was then correct to explain that "[o]nce Defendant has made this initial showing, the burden shifts to Plaintiff to identify evidence on which a reasonable jury could find that an exception to the applicable statute of limitations applies." 1-ER-7; *see NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 383 n.2 (9th Cir. 1979) ("The party seeking the benefit of the avoidance of the statute of limitations carries the burden of proof to establish the elements. Moreover, all presumptions are against him since his claim to exemption is against the current of the law and is founded on exceptions."); *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) (to defeat summary judgment on statute of limitations grounds, "the plaintiff

must produce at least some significant, probative evidence" that an exception applies (quotation marks omitted)).

### B. Under Its Own Theory of the Case, Rumble's Claim Accrued More Than Four Years Before It Filed Suit.

Under federal law, Section 2 antitrust claims like the one Rumble asserts here are "forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. Rumble does not dispute that "this 4-year SOL applies to accrual of its claims." Br. 21.

For antitrust claims, "a cause of action accrues when a defendant commits an act that injures the plaintiff." *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1189–90 (9th Cir. 1984). When a plaintiff learned of the allegedly anticompetitive conduct is not the test; a claim accrues when the defendant's alleged conduct first injured the plaintiff. *See, e.g.*, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190–91 (1997) (explaining that under "the normal accrual rule" for federal antitrust claims the "start[ of] the limitations period" is "the point the [defendant's anticompetitive] act first causes injury"); *Beneficial Std. Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274–75 (9th Cir. 1988) (explaining that under 15 U.S.C. § 15b, "the plaintiff's knowledge is generally irrelevant to accrual, which is determined according to the date on which injury occurs").

Applying this well-settled test, Google explained in its summary judgment motion how Rumble's claim accrued at least four years before Rumble filed its Complaint. 10-ER-1993–94. In particular, Google pointed out that Rumble claimed damages from Google's allegedly anticompetitive conduct dating back to April 2014—*more than six years before Rumble filed suit*. 10-ER-1993. The report of Rumble's damages expert "calculated damages for the period from April 2014 through the present," 10-ER-2054, reiterating that the "damages estimate begins in April 2014" and specifically calculating purported lost profits for every year from 2014 through 2024. 10-ER-2063–64.

Google also cited the deposition testimony from Rumble's CEO, Chris Pavlovski, who contended that "[b]y 2013, [when he] started Rumble" he "immediately" faced the "issue" of Google Search traffic not coming to Rumble. *See* SER-11–12. And Google further cited Rumble's interrogatory response asserting that the provisions in Google's Android agreements alleged to be anticompetitive were in place "since at least 2011." 8-ER-1420 n. 20 (citing 9-ER-1784); *see also* 9-ER-1769.[1]

_____

[1] Rumble argues (Br. 22) that Google exhibited "uncertainty and ambiguity" as to when Rumble's claim accrued. That is groundless. Google noted that

17

Further, as the district court observed in its opinion, Rumble's own Complaint alleged damages beginning in April 2014. Rumble alleged that it suffered "damages proximately caused" by Google's anticompetitive conduct and included a chart with data dating to April 2014 that provided the basis for those allegations.[2] 6-ER-1113–14. It also alleged that "[s]ince 2013" Rumble had been losing users "due to Google's anticompetitive and monopolist behavior and self-preferencing." 6-ER-1115. Likewise, Rumble served another expert report that reiterated that the allegedly anticompetitive conduct began "in 2013 and even earlier." 9-ER-1699–700, 1702–03.

Rumble's appeal brief also expressly confirms that it "alleges it suffered injuries resulting from Google's anticompetitive conduct *as early as 2014*." Br. 2 (emphasis added). But it is uncontested that Rumble did not file suit until

---

based on Rumble's own assertions its claim may have accrued *prior to 2014*. But Google was clear there was no doubt the statute of limitations had long-since run by the time Rumble filed suit. 10-ER-1993–95; 8-ER-1419–21.

[2] Rumble asserts that "the District Court adopted its own novel theory *sua sponte* on" accrual because it cited *Rumble's own Complaint* "without prior notice to Rumble." Br. 23–24. As noted earlier, Google plainly set forth the "theory" that Rumble's claim accrued in April 2014 in its motion for summary judgment. 10-ER-1993. And Rumble can hardly complain that the district court relied on allegations from its own Amended Complaint.

*2021.* That is *three years* after the four-year statute of limitations expired *in 2018,* according to Rumble's own allegations.

In the face of all of this, Rumble argues—for the first time on appeal—that Rumble's assertion of injury from Google's allegedly anticompetitive conduct dating back to 2014 or earlier did not mean Rumble's claim *accrued* at that point because "antitrust injury" is distinct from "claim accrual." Br. 22–24. Rumble not only waived this argument below, but it is wrong.

### C. Rumble Waived Its New Accrual Argument.

Rumble never made any antitrust injury accrual argument below. It made no attempt to distinguish "antitrust injury" from "claim accrual" in its opposition to Google's summary judgment motion and did not raise it at oral argument. *See* 8-ER-1514–15. Rumble only asserted (incorrectly) that a discovery rule applied. 8-ER-1514–15. But Rumble's counsel conceded at the summary judgment hearing that no such discovery rule applied here, 6-ER-1206, and it does not attempt to revive that argument on appeal.

Having failed to make the antitrust injury argument below, Rumble may not assert it now for the first time on appeal. *See, e.g., King,* 148 F.4th at 634 n.5; *McKnight,* 54 F.4th at 1078 n.2; *Handa,* 401 F.3d at 1132. Rumble's waiver of its accrual argument below is thus dispositive of this point.

19

### D. The District Court's Accrual Analysis Was Correct.

Even if considered, Rumble's argument is wrong on the merits. Rumble argues that "[t]he District Court erred by conflating antitrust injury with claim accrual." Br. 22. But this assertion is both nonsensical in the face of Rumble's own allegations and refuted by longstanding precedent.

To begin, Rumble's assertion that it hypothetically could have suffered "antitrust injury" *before* its antitrust claim accrued is unfounded based on its own allegations. Rumble's brief does not even argue that any element of its claim was lacking in 2014, nor did Rumble ever posit that below. And in quantifying alleged damages back to April 2014, Rumble's damages expert was not calculating some harm in the abstract. Rumble's expert report made clear that he was purporting to "quantify the damages to Rumble *caused by Google's alleged anticompetitive conduct*." 4-ER-685 (emphasis added); *see also* 4-ER-686 ("I calculate Rumble's lost profits based on the difference between its profits in a 'but-for' world, free of Google's *alleged anticompetitive conduct*, and Rumble's actual profits in the actual *world in which that conduct allegedly occurred*." (emphases added)); 4-ER-697 ("I have used a well-accepted methodology to calculate damages to Rumble *resulting from Google's alleged anticompetitive behavior*." (emphasis added)). Rumble's

expert report calculated those alleged damages expressly "for the period from April 2014 to the present." 4-ER-685. And, again, Rumble's own appeal brief acknowledges that it "alleged damages for *injuries resulting from Google's anticompetitive conduct as early as April 2014*." Br. 2 (emphasis added).[3]

Further, longstanding precedent directly contradicts Rumble's position, establishing that accrual of an antitrust claim is predicated on when alleged *injury* to the plaintiff occurs. "[A] cause of action accrues *when a defendant commits an act that injures the plaintiff*." *Airweld, Inc.*, 742 F.2d at 1189–90 (emphasis added); *see also Hawthorne Hangar Ops., L.P. v. Hawthorne Airport, LLC*, 2022 WL 3102452, at *2 (9th Cir. Aug. 4, 2022); *Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*, 2022 WL 595696, at *2 (9th Cir. Feb. 28, 2022).

None of the cases that Rumble cites hold otherwise. Rumble cites three cases (Br. 23) that did not discuss accrual at all and instead reached holdings about the substantive elements of Sherman Act claims, not when such claims accrue. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S.

---

[3] In fact, Rumble asserted below that "it may seek relief for conduct going back years—from the time that Rumble was formed in 2013" and "from the time that Google acquired YouTube in 2006." 8-ER-1515.

209, 225 (1993); *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1214 (9th Cir. 1997). Rumble also cites *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971), for the proposition that "[a]ntitrust claims accrue not when harm is first felt, but when the elements of the cause of action . . . are complete." Br. 23. But even if that were the rule, that argument is unavailing because Rumble has never claimed that all the elements of its single Section 2 claim were not met by 2014 (and on appeal it nowhere identifies what element of its claim was supposedly unsatisfied in 2014). Contrary to Rumble's attempt to recast the undisputed record below, Rumble's CEO testified unequivocally that he believed Google was self-preferencing in favor of YouTube soon after Rumble was launched (if not before). SER-11–12.

Finally, in its bid to contest the district court's conclusion on accrual, Rumble goes so far as to assert that Rumble's damages expert report "is agnostic as to when the harm occurred." Br. 24. This is frivolous. Rumble's expert report—as described above—expressly calculated damages for each calendar year back to 2014. 4-ER-694–95. The report states that the "Damages Period" began in "April 2014." 4-ER-685. Rumble never disputed below that it was seeking damages for purported anticompetitive conduct

22

going back to 2014, nor does Rumble dispute that now. Rather, as noted above, Rumble explicitly confirms it in its appeal brief. *See* Br. 2.[4]

In sum, the district court's conclusion that Rumble's claim accrued by April 2014 was grounded in well-settled law and based on Rumble's own theory of the case. Only if Rumble could demonstrate a triable issue on an exception to the four-year statute of limitations could its claim survive summary judgment. But, as explained in the following sections, Rumble did not do so below—and cannot now on appeal.

## III. The District Court Properly Concluded that Rumble Failed to Adduce Evidence Establishing a "Continuing Violation" Exception.

Rumble argues that the district court erred by not restarting the limitations period "due to Google's continuing violations in preferencing YouTube in Google Search and in the anti-competitive Android Agreements." Br. 25–48. The district court correctly rejected this contention below when Rumble failed to produce any evidence in support of its assertion. None of the new arguments Rumble raises for the first time on appeal change that result.

---

[4] In any event, Rumble's damages report is not the only evidence supporting the accrual of Rumble's claim by April 2014. As discussed above, there are multiple other admissions evidencing accrual of Rumble's claim by 2014 under its own theory—none contradicted below or now on appeal. *See supra* pp. 3–5, 16–18.

### A. Rumble Failed to Present Any Evidence of a "Continuing Violation" in Its Summary Judgment Opposition.

Under the "continuing violation" doctrine, a plaintiff may argue that "an overt act" committed by the defendant restarts the statute of limitations. *Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234, 237 (9th Cir. 1987). But not every act by a defendant is an "overt act" for purposes of restarting the statute of limitations. Rather, to establish a continuing violation sufficient to restart the statute of limitations, the "overt act" (1) "must be a new and independent act that is not merely a reaffirmation of a previous act" and (2) "must inflict new and accumulating injury on the plaintiff." *Id.* at 238.

In its opposition to Google's motion for summary judgment, Rumble referenced the continuing violation doctrine in just a single sentence—what the district court aptly described as "one cursory sentence" that was "fatally vague and conclusory." 1-ER-13–14.[5] Rumble did "not identify any specific facts that flesh out this general assertion in any detail, and [did] not identify any evidence in the record to support it." 1-ER-13. Rumble did "not address

---

[5] The entirety of that sentence was: "[Google's] continuing self-preferencing of YouTube and continued monopolization via the Android Agreements over a number of years constitute continuing violations that, as a matter of law, restart the limitations period." 8-ER-1515. Rumble cited no evidence in support of this conclusory assertion.

the required elements of the continuing violations doctrine and the 'overt act' test, or articulate how" any conduct by Google "amounted to new and independent acts committed during the limitations period that inflicted new injury on" Rumble.  1-ER-14.

Given Rumble's failure to identify *any* evidence in support of its conclusory continuing violation argument, the district court properly concluded that Rumble's "showing [wa]s inadequate to preclude summary judgment."  1-ER-13–18; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986) ("The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) ("[The non-moving party] cannot defeat summary judgment with . . . unsupported conjecture or conclusory statements."); Fed. R. Civ. P. 56(c); *supra* p. 8.  While Rumble's counsel attempted to expand on its assertion at oral argument, counsel still failed to adduce *any* evidence—"it amount[ed] to bare attorney argument lacking any evidentiary support."  1-ER-14–16.

As this Court has long recognized, "a district court is not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen*, 237 F.3d at 1029 (citation omitted); *see also, e.g.*, *Smith v. City of*

25

*Medford*, 2025 WL 1077358, at \*2 (9th Cir. Apr. 10, 2025) ("Plaintiff must apply the legal standards to the facts—the court cannot dig through the record and construct their arguments for them."). Here, Rumble failed to meet its burden to identify evidence in opposing summary judgment based on an asserted continuing violation, let alone evidence that would be sufficient to create a triable issue. That should be dispositive of this issue on appeal. *See LVRC Holdings LLC*, 581 F.3d at 1137.

### B. Rumble's Belated Continuing Violation Arguments Are Improper and Likewise Fail to Meet Its Summary Judgment Burden.

In a belated bid to substantiate its meritless claim, Rumble raises for the first time on appeal a series of new factual assertions and arguments. Rumble postures as if it raised these below in support of its continuing violation theory. But it did not and, accordingly, the Court should not entertain them now. As this Court has made clear, "a party cannot treat the district court as a mere ill-placed bunker to be circumvented on his way to this court where he will actually engage his opponents." *Handa*, 401 F.3d at 1132. The Court should not countenance Rumble's gambit. Moreover, to the extent considered, Rumble's new contentions fail to create a triable issue in any event for the reasons explained below.

26

1.    <u>Rumble Waived Its Arguments.</u>

Rumble made none of its continuing violation arguments in its opposition below, and the Court should thus decline to reach them here. *See McKnight*, 54 F.4th at 1078 n.2; *Handa*, 401 F.3d at 1132. Indeed, each of Rumble's arguments relies on materials cobbled together from disparate parts of the summary judgment record that Rumble did not cite or rely on in its statute of limitations opposition. Just as Rumble may not raise new arguments on appeal, Rumble may not introduce purported factual evidence that it brings to the Court's attention for the first time on appeal in support of those arguments. *See, e.g.*, *Carmen*, 237 F.3d at 1030–31; *LVRC Holdings LLC*, 581 F.3d at 1137; *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 999 (9th Cir. 2002) ("[Appellant's] urging of this evidence for the first time on appeal cannot create a triable issue of fact because he failed to articulate this evidence to the district court in opposition to the summary judgment motion."); *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 595 n.6 (9th Cir. 2002) ("We have made clear that we generally will not consider on appeal from the grant or denial of summary judgment matters that are not first affirmatively brought to the attention of the district court.").

To the extent Rumble claims the Court may consider these materials because Rumble cited some of them in support of other, unrelated arguments in its summary judgment opposition, that is incorrect. District courts "rely on the nonmoving party to *identify with reasonable particularity* the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (emphasis added); Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ("If a party wishes the court to consider [evidence] for more than one issue, the party should bring that desire to the attention of the court. Having failed to do so, [Appellant] cannot now fault the district judge for failing to consider the [evidence].").

In short, the Court should not entertain Rumble's new continuing violation arguments. Having failed to make these arguments or cite specific evidence below, Rumble may not use this appeal to do so for the first time.

2. <u>Rumble's New Assertions Fail to Create a Triable Issue.</u>

Even if this Court were to consider Rumble's new arguments, they are insufficient for Rumble to meet its burden of identifying *evidence* of a *genuine* issue of *material* fact. *Anderson*, 477 U.S. at 256–57.

28

### a. Rumble Mischaracterizes the Applicable Standard.

To begin, Rumble's contentions are premised on a mischaracterization of the applicable continuing violation standard. Rumble argues that because "Google could have unilaterally ceased its wrongful conduct at any time," Google's failure to do so constitutes a "continuing violation." Br. 28. But that is simply not the test. Again, the standard (which Rumble accurately repeats at one point in its brief, Br. 26) is well-established: the plaintiff must identify evidence of "a new and independent act that is not merely a reaffirmation of a previous act" that "inflict[ed] new and accumulating injury on" the plaintiff. *Pace Indus.*, 813 F.2d at 238. Rumble's argument would turn the "overt act" test into a failure-to-act test, which has not been adopted by any court.

Rumble cites *AMF, Inc. v. General Motors Corp.*, 591 F.2d 68, 71–72 (9th Cir. 1979), in arguing that unless a defendant's act is "irrevocable, immutable, permanent and final," any subsequent injuries are necessarily the result of a "continuing violation." Br. 27. But Rumble ignores this Court's holding in *AMF*, which *forecloses* Rumble's reading. This Court held that injuries resulting from the "unabated inertial consequences of some pre-limitations action" are barred by the statute of limitations. *AMF, Inc.*, 591 F.2d at 72. In other words, the mere ability to later change one's mind and

reverse course is insufficient. Instead, the plaintiff must meet the demanding requirement of identifying a new "overt act" sufficient to restart the statute of limitations. *Pace Indus.*, 813 F.2d at 238.[6] Rumble has failed to do so here.

> b. Rumble Fails to Substantiate a Continuing Violation as to the Design and Operation of Google Search.

Rumble makes five assertions attempting to identify a cognizable "overt act" as to the design and operation of Google Search. None have merit.

*First*, Rumble trumpets that Google is "constantly" changing its search algorithms. Br. 29–32, 35–37. But that is a red herring. Rumble nowhere explains how those changes qualify as "overt acts" with respect to *its claim*. Rumble's theory is that Google has self-preferenced YouTube in Google search results in an unbroken manner since at least 2014. *See supra* pp. 3–5, 16–18. To qualify as an "overt act" sufficient to restart the limitations period,

---

[6] Two other cases from this Court that Rumble cites on this point likewise do not support Rumble's view of the standard. In *LaSalvia v. United Dairymen*, 804 F.2d 1113, 1117 (9th Cir. 1986), a material question of fact existed as to when the plaintiff's claim had *accrued* where the evidence was "ambiguous" regarding whether the defendant's pre-limitations-period conduct had injured the plaintiff. *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014), which concerned a motion to dismiss, applied a rule unique to the price-fixing context that "each time a defendant sells its price-fixed product, the sale constitutes a new overt act." As the district court noted, that rule is inapplicable here because Rumble does not bring a price-fixing claim. *See* 1-ER-16.

any change to Google's search algorithms must have "caused [Rumble] harm over and above the harm that the earlier acts caused"—that is over and above the harm already caused by Google's conduct that purportedly effectuated the self-preferencing dating back to 2014. *Klehr*, 521 U.S. at 190. Rumble nowhere identifies any such material change to Google Search—and it certainly provides no *evidence* of any such change, as would be required to defeat summary judgment. *See Hexcel Corp.*, 681 F.3d at 1063. As the district court noted, a vague assertion that there were changes in Google's search algorithms unaccompanied by any explanation of the changes and how they purportedly harmed Rumble would be insufficient "even to *plead* a continuing violation." 1-ER-16–17 (collecting cases dismissing claims premised on "overt act" allegations that lacked detail).

*Second*, Rumble cites a chart prepared by one of its expert witnesses that lists Google Search queries he purportedly ran where YouTube ranked highly. Br. 33–34. But this, too, is beside the point. Merely asserting that Google *continued* its policy of self-preferencing YouTube "after January 2017" does not identify any new "overt act" sufficient to restart the statute of limitations. Again, Rumble's theory in this case is that Google has self-preferenced YouTube in Google search results in an unbroken manner since

31

at least 2014. *See supra* pp. 3–5, 16–18. Rumble now appears to argue that each individual set of search results that Google returns in response to a search query is an "overt act" that restarts the statute of limitations.[7] But that argument, too, ignores that the "unabated inertial consequences of some pre-limitations action" are not an "overt act." *AMF, Inc.*, 591 F.2d at 71–72. The search results that Google returns to users are the result of an automated process—the Google Search algorithms. 10-ER-1965–66. If Rumble's allegations are true, to the extent the Google Search algorithms returned search results during the limitations period as designed pre-2014, that is just an "unabated inertial consequence" of those pre-limitations period design choices. It is, at most, a "reaffirmation of a previous act," which does not restart the statute of limitations. *Pace Indus.*, 813 F.2d at 238; *see also, e.g.*, *David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938 (9th Cir. 1981) (affirming summary judgment based on statute of limitations, holding that defendant's repeated refusal to deal with plaintiff was not a continuing violation, as each instance "was a reaffirmation of the original decision not to deal with the plaintiff").

---

[7] To the extent this is what Rumble is arguing, Rumble waived this argument by failing to make it below. *See McKnight*, F.4th at 1078 n.2.

Rumble cites *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir. 1986), but that case does not support its position. *Hennegan* involved a civil conspiracy whereby souvenir vendors made payments to tour operators in exchange for the operators "shepherding" tourists away from plaintiff's store and to the vendors' shops. 787 F.2d at 1300–01. The Court held that each time the conspiracy was accomplished—via the operators shepherding tourists and payment made in return—constituted an "overt act." *Id.* Those facts, which involved two independent actors accomplishing a civil conspiracy akin to a price-fixing conspiracy, are notably different from the facts here: a single defendant alleged to have designed an automated process to continuously preference a given website. The facts here are far more akin to *AMF*, where this Court held that "each day" the defendant refused to deal with the plaintiff did not constitute a new "overt act." *See* 591 F.2d at 70–72; *see also, e.g., David Orgell, Inc.*, 640 F.2d at 938; *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1107 (N.D. Cal. 2012) (holding software releases during limitations period that involved "no *additional* anticompetitive conduct" compared to prior releases "are simply 'reaffirmations of a previous act' insufficient to restart the statute of limitations").

*Third*, Rumble points to Google's introduction of "Lightbox Play" for YouTube on the Google search results page, purportedly in 2020.[8]  Br. 39–40.  As Google explained below, this feature has nothing to do with search ranking and is therefore irrelevant to Rumble's claim.  The feature allows users to watch videos—from YouTube and certain other platforms that permit the feature to be utilized for their content—"directly within the Google Search page."  Br. 39; 8-ER-1408.  This feature does not affect what content surfaces in search results or where it ranks, but instead whether a user can view it without clicking out of Google Search.  SER-17.  For that reason, many websites do not want the feature enabled because they want the traffic to go to their website.  8-ER-1408; SER-15–16.  Indeed, Rumble's claim here was that "Google's self-preferencing reduces 'click-throughs'" to Rumble.  Br. 35 (citing 9-ER-1735).  Enabling Lightbox Play for Rumble videos would have given users the option to view those videos *on the Google results page* instead of having them "click-through" to Rumble.  For that reason, Rumble has never

---

[8] Despite claiming in its appellate brief that this feature launched in 2020, Rumble below argued that "Google initially made YouTube video results viewable directly on Google's Search page" back "[i]n 2006."  8-ER-1488.  A 2006 release of this feature, of course, belies any notion that it could constitute an "overt act" by Google during the limitations period.

explained what harm it allegedly suffered from Google purportedly having not enabled this feature for Rumble videos.

Even more, Rumble offers no explanation as to how the "Lightbox Play" feature "inflict[ed] new and accumulating injury" on Rumble that was "over and above" the harm to Rumble purportedly caused by the alleged self-preferencing of YouTube in the search ranking processes that Google supposedly implemented years earlier.[9]  *See Pace Indus.* 813 F.2d at 238; *Klehr*, 521 U.S. at 190.  Again, *that* is Rumble's burden, and citing a feature that purportedly was implemented in the four years preceding its suit but has nothing to do with search ranking does not satisfy that burden.

*Fourth*, Rumble attempts to rely on a blatant mischaracterization of a single internal Google email sent by Dr. Pandu Nayak.  Br. 40–41.  The email was no "directive . . . to elevate YouTube's prominence," as Rumble contends.

---

[9] At most, Rumble cites testimony from a Google executive that it claims shows the "Lightbox Play" feature "served to grow YouTube."  Br. 39.  Whether the feature grew YouTube does not address whether that feature constituted self-preferencing that harmed Rumble.  An act that did not harm Rumble could not have been an "overt act" that restarted the limitations period.  *See AMF, Inc.*, 591 F.2d at 71.  Moreover, the document that the Google executive was testifying about in the passage Rumble cites relates to an event from *May 16, 2007*, which makes clear the feature could not have been an "overt act" in the four years leading up to Rumble's filing of its Complaint.  9-ER-1661, 9-ER-1663–64.

*Id.* That is unsupported by the text of the email and refuted by the only evidence in the record about the meaning of the email: a declaration from Dr. Nayak where he explained that "[t]here was no effort during my tenure at Google to ensure that videos hosted on YouTube received high quality scores simply because they were hosted on YouTube, and this email was not seeking that." 8-ER-1464–65; *see also* 10-ER-2016–17 (testifying he was one "hundred percent sure" there is no "self-preferencing" of YouTube in Google search results). Rumble's conclusory legal argument is not evidence. *See Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1174, 1182 (9th Cir. 2016) ("Speculation and innuendo offered by [a plaintiff] cannot substitute for evidence.").

In any event, Rumble once again fails to provide any explanation—not to mention the required *evidence*—as to how Dr. Nayak's internal email "inflict[ed] new and accumulating injury" on Rumble that was "over and above" the harm to Rumble purportedly caused by the preferencing of YouTube in Google's search ranking processes that supposedly dated back to 2014 or earlier. *See Pace Indus.*, 813 F.2d at 238; *Klehr*, 521 U.S. at 190. Rumble identified no evidence of a change to Google Search that was

implemented because of Dr. Nayak's email, let alone evidence of a change that materially impacted the ranking of Rumble webpages in Google search results.

*Fifth and finally*, Rumble points to Google's "salient terms" search ranking signal, which, according to Rumble, "was first deployed in 2017." Br. 41. But this argument, too, cannot resuscitate Rumble's claim. Yet again, Rumble fails to adduce any evidence that this signal (one of *hundreds if not thousands* used in search ranking) "inflict[ed] new and accumulating injury" on Rumble at all, let alone "over and above" the harm to Rumble purportedly caused by the preferencing of YouTube in Google's search ranking processes that supposedly dated back to 2014 or earlier. *See Pace Indus.*, 813 F.2d at 238; *Klehr*, 521 U.S. at 190; 10-ER-2012; SER-5. This alone is fatal to Rumble's argument.

But there is more. Rumble premises its contention that this signal was launched in 2017 on one line in a 72-page document that it did not cite *at all* in its summary judgment opposition. Indeed, Rumble never discussed the "salient terms" signal in its summary judgment opposition *at all*.[10] There is

---

[10] As such, it entirely waived this argument below. *See McKnight*, 54 F.4th at 1078 n.2. In fact, Google moved the district court to seal the page Rumble now relies on because neither party cited it and it was therefore irrelevant to the

no basis to reverse the district court for failing to consider this evidence—the quintessential needle in a haystack that a district court is not obligated to locate on its own. *See, e.g.*, *Carmen*, 237 F.3d at 1029.

Further, what Rumble cites is a single sentence: "ST released in 2017, steady progress since." Br. 41 (citing 11-ER-2297). Rumble asserts that this means Google "first deployed" the salient terms signal in 2017, even though there is no record evidence supporting that reading. A release in 2017 could equally mean that Google deployed *a version* of the signal then, a version that did not meaningfully impact Rumble compared to prior versions. But Rumble never asked about this passage during any stage of fact discovery, no expert witness relied on it, and it appears in this case for the first time on appeal.

In addition, Rumble's argument rests on badly misconstruing an email from Google engineer Dr. Pavan Desikan. Br. 41 (citing 9-ER-1685 & 11-ER-2297). That email related to a summary of certain queries that he ran in Google Search based on an article from the Wall Street Journal. Dr. Desikan explained that, *for those particular queries*, the scores generated by certain search ranking signals for "the YouTube result w[ere] higher than on the other

district court's resolution of Google's summary judgment motion; Rumble did not object. *See* Dkt. No. 20.3 at 58.

results." 8-ER-1453–54, 1460–61. The article did not mention Rumble at all, nor suggest that the queries at issue related to Rumble. 2-ER-273–82. And Dr. Desikan's email never stated that Google Search signals "prefer" YouTube results more broadly—let alone that any specific "salient terms" signal does.[11]

In fact, the text of the email refutes any notion that a salient terms signal could have "inflict[ed] new and accumulating injury" on Rumble. *See Pace Indus.*, 813 F.2d at 238; *Klehr*, 521 U.S. at 190. He listed salient terms third "in the order of . . . strength" for the queries he examined, 8-ER-1685, and noted that for these queries "even if you remove the top few contributing signals the YouTube result will still rank in the top," 8-ER-1685. If removing the "salient terms" signal from Google's algorithms would not meaningfully change the ranking of search results, its launch cannot have "inflict[ed] new and accumulating injury" on Rumble that was "over and above" the harm to Rumble purportedly caused by search ranking signals that Google launched in advance of the limitations period. *See Pace Indus.*, 813 F.2d at 238; *Klehr*, 521 U.S. at 190.

---

[11] To the contrary, Dr. Desikan's testimony (like that of every other Google employee that Rumble deposed in this case) was clear that Google does not self-preference YouTube. SER-6–8.

For all these reasons, even Rumble's new assertions about the design and operation of Google Search cannot meet its burden under the continuing violation standard.

      c.   <u>Rumble Fails to Substantiate a Continuing Violation as to Google's Android Agreements.</u>

To the extent the Court considers Rumble's attempts for the first time on appeal to identify "overt acts" that Google purportedly committed during the limitations period with respect to its Android agreements, those assertions are likewise baseless. Much of Rumble's argument amounts to hand-waving, such as citing in conclusory fashion its "54-page interrogatory response" purporting to summarize Google's Android agreements. Br. 44. In substance, Rumble points to just two supposed acts by Google that it claims establish a continuing violation pertaining to the Android agreements. Neither suffices.[12]

---

[12] Rumble's citation of the "DOJ Case" has no merit. Br. 1 n.1, 13, 45, 57. That case did not involve YouTube and the court there did not consider the contractual provisions that Rumble challenges here concerning the preinstallation, placement, and deletability of the YouTube app. *See generally United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024). In any event, there was no ruling in that case about the applicability of any statute of limitations or whether Google engaged in any "overt act" during the limitations period applicable to this case.

*First*, Rumble asserts that the definition of "Alternative Search Service" in certain of the agreements at issue changed during the limitations period. Br. 46. But those provisions are irrelevant to Rumble's claim because they have nothing to do with YouTube. They relate to *search* services that mobile phone manufacturers and mobile carriers cannot preload should they wish to receive payments from Google under certain agreements. *See, e.g.*, 10-ER-1855, 1864; 10-ER-1895, 1902. Rumble is not an internet search provider and it does not bring claims relating to any market for internet search engines. Its own brief makes clear that the provisions of Google's Android agreements that it challenges as anticompetitive are those relating to the preinstallation, supposed "prominent and preferred placement," and alleged non-deletability of the YouTube app. Br. 41–42. Rumble argued in an interrogatory response that those provisions have been in place "[s]ince at least 2011." 9-ER-1769, 1784. Rumble does not identify *any material change* during the limitations period to the provisions relating to YouTube that it challenges as anticompetitive—let alone *evidence* showing how any such change led to new injuries. As such, Rumble failed to meet its burden to supply evidence establishing actions by Google during the limitations period that "inflict[ed] new and accumulating injury" on Rumble "over and above" the harm to

41

Rumble purportedly caused by contract provisions that had been in place since 2011. *See Pace Indus.* 813 F.2d at 238; *Klehr*, 521 U.S. at 190.

*Second*, Rumble points to the fact that Google's Android agreements "do not automatically renew," asserting that any new agreement that Google entered during the limitations period constituted an "overt act." Br. 46–47. That is wrong as a matter of law and Rumble's argument lacks evidentiary support. At most, Rumble identifies certain contracts whose terms expired during or around the limitations period. Br. 46–47. But Rumble nowhere identifies the specific contracts that Google executed during the limitations period that it claims caused harm to Rumble, nor explains how those contracts "inflict[ed] new and accumulating injury" on Rumble. *See Pace Indus.*, 813 F.2d at 238. The district court reached its conclusion, in part, because of this same failure of proof by Rumble below. *See* 1-ER-17 ("Plaintiff does not identify a single fact supported by record evidence that describes Defendant's actual conduct during the limitations period regarding its contracts, including when and with whom Defendant entered into them, their actual terms, or how Defendant's use of them inflicted new and accumulating harm on Plaintiff.").

Further, even if Rumble had adduced evidence of specific contracts, Rumble still could not establish a "continuing violation" based on renewal

42

contracts that included the same relevant terms as prior agreements Google executed before the limitations period. As this Court recognized in *SaurikIT, LLC v. Apple, Inc.*, "permitting new unchanged . . . agreements to establish continuing violations would vitiate the purpose of the statute of limitations." 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023); *see also Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015) (explaining that the "maintenance and renewal" of "preexisting" agreements "does not qualify as an overt act"). To the extent Google renewed contractual provisions that had been in place since 2011 (as Rumble maintains they were), those renewals only constituted a "reaffirmation" and not a new "overt act."

The cases that Rumble cites are not to the contrary. In *Pace Industries*, this Court held that "attempted enforcement of an illegal contract" can constitute an "overt act" when the defendant attempts that enforcement during the limitations period. 813 F.2d at 237. But that requires proof that the defendant "actually did enforce" the agreement. *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989).[13] Once again, Rumble identifies no

---

[13] Rumble argues that *Eichman* "does not apply here" because "Rumble alleges Google took affirmative steps to enforce and revise anticompetitive contracts within the limitations period." Br. 48. But allegations are insufficient to defeat summary judgment. *Hernandez v. Spacelabs Med. Inc.*,

such evidence, as required at the summary judgment stage. *Anderson*, 477 U.S. at 256–57.

Rumble also cites *Samsung Electronics Co. v. Panasonic Corp.*, 747 F.3d 1199, 1203 (9th Cir. 2014), a ruling on a motion to dismiss that is inapplicable. That case involved allegations that during the limitations period the defendants conspired to adopt a new, "expanded" agreement to address a new technology that was neither covered nor contemplated by an existing agreement, *id.* at 1201–02, 1203–04. And that case also involved allegations that the defendants took new steps to "enforce" their contract during the limitations period, specifically defendants' requirement that the plaintiff make "license payments." *Id.* at 1204. Rumble has no such evidence here.[14]

The remaining cases that Rumble cites also are inapposite. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968) (finding continuing violation where defendant entered new contracts and proactively enforced old ones during the limitations period; Rumble presents no evidence

---

343 F.3d 1107, 1112 (9th Cir. 2003). And Rumble cites no *evidence* in support of this conclusory statement.

[14] Contrary to Rumble's insinuation, Br. 27 n. 5, the district court addressed *Samsung*, despite Rumble's failure to cite it in its summary judgment opposition, and correctly ruled that it is inapplicable here. 1-ER-14–18.

of either); *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444 (9th Cir. 1996) (holding that refusal to deal announced via written letter during the limitations period constituted an "overt act"; Rumble presents no such evidence); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1305–06 (9th Cir. 1983) (holding that contract in furtherance of conspiracy executed during the limitations period constituted "overt act" even though conspiracy itself predated the limitations period; Rumble presents no evidence of a conspiracy here).

*          *          *

In sum, Rumble "had ample opportunity to support its conclusory arguments with specific facts and record evidence, but it did not."  1-ER-18. For multiple reasons, the district court properly concluded that Rumble's assertion of a continuing violation failed.

## IV.  The District Court Properly Concluded that Rumble May Not Assert "Fraudulent Concealment" and Failed to Adduce Evidence Meeting the Standard In Any Event.

Rumble argues that the district court erred by not tolling the statute of limitations on grounds of fraudulent concealment.  Br. 49–64.  Each of its arguments lacks merit.  First, this Court's precedent makes clear that a plaintiff cannot assert fraudulent concealment if it failed to plead the exception

45

to the statute of limitations in its Complaint, as Rumble failed to do here. Second, even if it were permissible for Rumble to assert fraudulent concealment for the first time in opposing summary judgment, Rumble failed to adduce evidence sufficient to satisfy either element of the two-prong standard for fraudulent concealment.

### A. Because Rumble Failed to Plead "Fraudulent Concealment," It May Not Rely on that Exception to Defeat Summary Judgment.

The district court properly held that because Rumble failed to plead fraudulent concealment in its Complaint, it could not rely on that exception in opposing summary judgment. 1-ER-8–9. The rule the district court applied is well-established. As this Court explained in *Wasco Products, Inc. v. Southwall Technologies, Inc.*, "federal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings" and "this rule applies even where the tolling argument is raised in opposition to summary judgment." 435 F.3d 989, 991 (9th Cir. 2006); *see also, e.g.*, *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662–63 (9th Cir. 1999) (affirming summary judgment where plaintiff failed to plead fraudulent concealment); *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996) (explaining that plaintiff "never pled the allegedly

concealed facts in her complaint" and holding that "[f]ailure to plead these facts waives this tolling defense" on summary judgment); *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980) ("Under . . . federal authority, the plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment.").

Here, Rumble's counsel conceded below that Rumble did not plead fraudulent concealment in its Complaint. 6-ER-1206–07. And Rumble does not argue otherwise on appeal. This is dispositive. Rumble may not rely on fraudulent concealment to defeat summary judgment.[15]

Rumble does not cite any contrary authority. It relies on *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902–03 (9th Cir. 2013), but that case did not involve fraudulent concealment at all—let alone question, or even address, this Court's precedent establishing Rumble's obligation to plead fraudulent concealment. Likewise, Rumble cites a district court opinion, *Staley v. Gilead*

---

[15] Rumble doubly waived its fraudulent concealment argument by not even citing the doctrine in its summary judgment opposition. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (plaintiff's failure to "offer the district court his contrary interpretation regarding when the limitations period beg[an]" in his "opposition papers" rendered the argument waived). As explained, *supra* p. 7, Rumble's counsel raised "fraudulent concealment" for the first time at oral argument below. 6-ER-1206–07; 8-ER-1514–15.

*Sciences, Inc.*, 2021 WL 4972628, at *14–19 (N.D. Cal. Mar. 12, 2021), which discussed that in the complaints at issue there, the plaintiffs "invoked fraudulent concealment" and evaluated whether those allegations were adequate to survive a motion to dismiss. And Rumble's citation of Federal Rule of Civil Procedure 8 is misguided, as the requirement that a plaintiff plead with particularity fraudulent concealment comes from Rule 9(b), not Rule 8. *See Wasco Prods., Inc.*, 435 F.3d at 990; *Margaritis v. BAC Home Loans Servicing LP*, 579 F. App'x 574, 576 (9th Cir. 2014).

Further, Rumble ignores what the district court recognized below: that Rumble's "statute of limitations problem is obvious on the face of the operative complaint," as it alleged "damages going back to April 2014." 1-ER-9. Thus, Rumble clearly had "reason to anticipate" that a statute of limitations argument would be raised here. *Id.*; *see supra* pp. 3–5, 16–18. Given that, the very cases Rumble cites recognize that a plaintiff's failure to plead sufficient facts to defeat an affirmative defense can be grounds for dismissal even on a Rule 12(b)(6) motion. *Rivera*, 735 F.3d at 902.

Rumble argues that *Wasco* and *Grimmett* are not applicable. But their holdings clearly apply. While it is true that *Wasco* involved an assertion of a civil conspiracy to toll the statute of limitations, it is not so limited as Rumble

48

claims. *Wasco* extended the heightened pleading requirements *for fraudulent concealment* to tolling assertions based on civil conspiracies. *See* 435 F.3d at 991. In doing so, it cited three other opinions from this Court that recognized the requirement that claims of fraudulent concealment must be pleaded in the complaint and held that there was no "principled basis for distinguishing civil conspiracy from these other grounds for tolling the statute of limitations." *See id.* (citing *389 Orange St. Partners*, 179 F.3d at 662–63; *Grimmett*, 75 F.3d at 514; *Conerly*, 623 F.2d 120–21).[16]

With respect to *Grimmett*, Rumble argues that it "illustrates" that supposed evidence of fraudulent concealment "must be evaluated if presented," even if the plaintiff waived the tolling defense. Br. 64. But this Court said no such thing in *Grimmett*. It instead recognized that the plaintiff's assertion of fraudulent concealment was not only waived there because of the

---

[16] Rumble cites two district court cases that it claims "declined to extend *Wasco* beyond [the civil conspiracy] context." Br. 63–64. Neither supports Rumble's position. *Grisham v. Philip Morris, Inc.* rejected arguments that a plaintiff who relies on the *discovery rule* to toll the statute of limitations must plead that in its complaint. 670 F. Supp. 2d 1014, 1021–24 (C.D. Cal. 2009). And *Cass, Inc. v. Prod. Pattern & Foundry Co.*, rejected similar arguments regarding *common-law tolling under Nevada law.* 2017 WL 1128597, at *15–16 (D. Nev. Mar. 23, 2017). Indeed, *Grisham* distinguished *Wasco* on the grounds that "fraudulent concealment . . . require[s] the plaintiffs to meet heightened pleading requirements." 670 F. Supp. 2d at 1022.

49

plaintiff's failure to plead it, but also that it was "meritless." 75 F.3d at 514–15 ("[The plaintiff's] tolling arguments lose on the merits as well.").

Finally, Rumble's suggestion that the district court should have granted it "leave to amend" is another frivolous contention. Br. 64. As Rumble concedes (Br. 64), it never made any such request to the district court. Having failed to make that request below, it is improper for Rumble to raise it now. *See In re Beverly Hills Bancorp*, 752 F.2d 1334, 1338 (9th Cir. 1984) ("The general rule that leave to amend under rule 15 should be freely granted will not be extended without limit when a rule 15 motion is brought after a claim has been fully litigated on the merits through appeal. At some point, there must be finality."). And it surely would have been too late to amend Rumble's Complaint at summary judgment in any event—25 months after Google served its Answer, and long after fact and expert discovery concluded.

Rumble's waiver of fraudulent concealment as a tolling defense to the statute of limitations is dispositive of the issue—Rumble could not rely on it to defeat summary judgment. This should be the end of the inquiry.

## B. In the Alternative, Rumble Failed to Establish a Triable Issue.

The district court correctly found that, even if Rumble had not waived fraudulent concealment as a tolling defense, Rumble failed to come forward

with evidence sufficient to meet the standard for establishing fraudulent concealment. 1-ER-10–13. In fact, Rumble failed to present *any* evidence relating to fraudulent concealment.

Fraudulent concealment has two elements: (1) that the defendant "affirmatively misled" the plaintiff regarding the facts giving rise to its claim, and (2) that the plaintiff "had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988). Both are "critical component[s]" of a fraudulent concealment claim; the failure to establish either prevents the tolling of the statute of limitations. *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1096 (9th Cir. 2005).

1. <u>The District Court Properly Applied the Fraudulent Concealment Standard.</u>

Rumble acknowledges that the district court recited the "correct standard" for fraudulent concealment. Br. 49. Nonetheless, Rumble asserts that the court's ruling "*per se* warrants reversal" because it determined that Rumble failed to establish a triable issue on fraudulent concealment's first element, so did "not need to address the issue of Plaintiff's actual or constructive knowledge." 1-ER-12–13. Rumble's assertion is mystifying.

The portion of the district court's opinion that Rumble takes issue with—stating that the failure to prove either of fraudulent concealment's two elements means "as a matter of law" the plaintiff cannot establish the existence of fraudulent concealment—is a direct quote from an opinion of this Court. 1-ER-12–13 (quoting *Thorman*, 421 F.3d at 1096). The district court did not "den[y] Rumble the opportunity to prove tolling" by "refusing to analyze actual or constructive knowledge." Br. 50. Rather, because Rumble failed to prove the first of two essential elements, the court did not need to reach the second. There is no merit to Rumble's argument.

Regardless, for all the reasons explained below, Rumble failed to prove both elements of fraudulent concealment—each providing an independent basis for affirmance. *See Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (per curiam).[17]

---

[17] Rumble's assertion that the district court "conflated the standards governing tolling with those governing accrual," Br. 50, is likewise meritless. The statement that Rumble points to was from the district court's *accrual* discussion, not its fraudulent concealment analysis. *See* 1-ER-7.

2. <u>There Is No Evidence that Google "Affirmatively Misled" Rumble.</u>

The first element of fraudulent concealment requires evidence that the defendant "affirmatively misled" the plaintiff regarding the facts underlying its claim. *Conmar Corp.*, 858 F.2d at 502. The plaintiff bears the burden of proving this element. *Id.* "Passive concealment of information is not enough,"[18] nor are claims that the defendant's actions "were by nature self-concealing." *Id.* at 505. And even an affirmative denial is only "enough if the circumstances make the plaintiff's reliance on the denial reasonable." *Id.*

Rumble failed to adduce any evidence that meets that standard here for two separate reasons: First, Rumble failed to identify any affirmatively misleading statement. Second, Rumble failed to produce any evidence of Rumble's reliance on any statement in not bringing suit within the limitations period.

a. Rumble's attempts to identify affirmatively misleading statements by Google were either waived below, insufficient to meet the rigorous fraudulent concealment standard, or both.

---

[18] There is an exception where "the defendant had a fiduciary duty to disclose information to the plaintiff." *Conmar Corp.*, 858 F.2d at 505. But Rumble makes no argument here that Google owed it a fiduciary duty, and it has none.

Rumble devotes much of its argument to asserting that Google kept the Google Search source code "non-public" and details of Google's commercial agreements with Android partners "secret." *See* Br. 53–57. But a defendant must engage in *fraudulent* concealment for tolling to occur. "Silence or passive conduct of the defendant is not deemed fraudulent." *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978). And "[m]erely keeping someone in the dark is not the same as affirmatively misleading him." *Thorman*, 421 F.3d at 1095. Rumble identifies no statement that Google made to affirmatively mislead Rumble. As such, Google's having kept Rumble "in the dark" cannot give rise to a claim of fraudulent concealment. *See Thorman*, 421 F.3d at 1095; *Rutledge*, 576 F.2d at 250.

In support of this point, Rumble remarkably relies on deposition testimony from Google witnesses *in this case* as supposed evidence of Google's "concealment" of details concerning how Google Search operates.[19] Br. 53–54. But that testimony, which of course all occurred *after* Rumble filed its Complaint, could not have concealed anything from Rumble during the

_____

[19] As Google explained below, Rumble misrepresents the testimony of these witnesses. *See* 8-ER-1403–8. But that has no bearing on the resolution of this appeal.

limitations period and thus cannot serve as a basis for tolling the statute of limitations before Rumble sued. And, at most, Rumble argues this testimony "suggests intentional concealment," Br. 54, which, for all the reasons discussed, is not evidence that Google *affirmatively misled* Rumble.

Rumble also takes issue with the "complicated" terms and structure of Google's Android Agreements with third parties that manufacture and/or sell Android mobile devices, arguing they made it more difficult for Rumble to determine the "operation and . . . effect" of these agreements. Br. 55–56. But again, that does nothing to show that Google affirmatively misled Rumble. To start, Rumble never made this argument below. *See* 8-ER-1514–15; 6-ER-1206–08. The Court should therefore decline to consider this argument for the first time on appeal. *See McKnight*, 54 F.4th at 1078 n.2. Further, the contention is meritless. These "secret" contracts between Google and third parties were not statements to Rumble. And saying that the agreements are "opaque and deceptive," Br. 55, is no different than asserting that these agreements "were by nature self-concealing," which this Court has held insufficient to establish fraudulent concealment. *See Conmar Corp.*, 858 F.2d at 505. Rumble also says Google concealed the structure of the Android

agreements by untruthfully "presenting them as unrelated standalones." Br. 56. But it cites no evidence of any statement by Google to that effect.[20]

Rumble additionally cites testimony from Google and its executives to Congress, which fares no better. *See* Br. 57–59. Once again, Rumble cited *none* of these statements in support of its fraudulent concealment argument below. *See* 6-ER-1206–07; 8-ER-1514–15. As such, the Court should not consider any of this "evidence" on appeal. *See Carmen*, 237 F.3d at 1030.

Even if these statements are considered, however, they do not amount to affirmatively misleading statements. Rumble first cites a statement from Google that it "has long sent large amounts of traffic to other sites." Br. 58 (quoting 3-ER-306–07). But that statement says nothing about whether Google "self-preferences" YouTube in Google search results, or about the Android agreements at all. So Rumble could not have reasonably relied on these statements for believing it did not have a claim. *See Conmar Corp.*, 858

---

[20] Rumble concedes that the lone piece of "evidence" it cites (which it did not cite in its statute of limitations argument below) was "[a]n internal Google presentation slide." Br. 56. An internal document provides no basis for a claim that Google misled Rumble. And regardless, that multiple agreements may operate together (as shown on that slide) is irrelevant to Rumble's claim. The aspects of the Android agreements that Rumble claims are anticompetitive are those relating to distribution of the YouTube app. Rumble cites nothing to show that Google affirmatively misled it with respect to *those* provisions.

F.2d at 505; *Rutledge*, 576 F.2d at 250. Next, Rumble quotes testimony from former Google CEO Eric Schmidt that Google's "universal search results are our search service—they are not some separate 'Google content' that can be 'favored.'" Br. 59 (quoting 8-ER-1468–69). But Rumble itself describes this answer as "non-responsive" to the question of whether Google "favors" its "products and services" in Google Search. Br. 58–59. At most then, according to Rumble's view, this statement represents Google's refusal to "own up" to certain alleged conduct. And "[a] failure to 'own up' does not constitute *active* concealment." *Grimmett*, 75 F.3d at 515.

The final statement that Rumble identifies in support of its claim of fraudulent concealment is Google's "Honest Results" policy. Br. 59–62. There are two statements of that policy. One is an articulation of the policy on a public website. *See* Br. 60 n.14. The other is an *internal* Google policy accessible only to Google employees. *See* 11-ER-2102–09. The public version appears nowhere in the summary judgment record. *See* 1-ER-10–11 ("a separate 'Public Honest Results site' . . . is not linked in the document or cited by Plaintiff"). The Court, therefore, should not consider it for the first time on appeal. *See Carmen*, 237 F.3d at 1030. And, as the district court held, Rumble could not have relied on a policy document that was internal to Google and has

57

only become accessible to Rumble after it brought this lawsuit. *See Rutledge*, 576 F.2d at 250; 1-ER-10–11.

Regardless, none of the statements that Rumble cites from either are specific enough to be evidence of "affirmative conduct" by Google in fraudulently concealing the facts underlying Rumble's claim. *Conmar Corp.*, 858 F.2d at 505. Courts regularly hold that a defendant's generalized statements are not an "affirmative act" that is misleading, "absent . . . evidence of pretextual justifications." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1078–81 (N.D. Cal. 2016). Statements in an employee handbook, for example, that a defendant "commits rigorously to observing applicable antitrust or competition laws" were insufficient. *Id.* at 1078. Similarly, SEC filings that a defendant "obeyed all applicable antitrust laws" were insufficient. *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 891–93 (N.D. Cal. 2015).

The district court correctly found the same with respect to the statements Rumble cites from Google's "Honest Results" policy. 1-ER-10–11. Rumble cites such generalized statements as "favoritism or impropriety in search could do severe and lasting damage to Google's reputation" and "the Search team will not act upon reports of flawed search results for which a reasonable person might perceive an ulterior motivation, such as . . .

58

[p]resenting Google products in a more favorable light." Br. 60–62 (citing 11-ER-2103–06). But Rumble cites no record evidence showing that those statements were pretextual, such that they could amount to an "affirmative act" to mislead Rumble. *See Garrison*, 159 F. Supp. 3d at 1078–81; *Ryan*, 147 F. Supp. 3d at 891–93.[21]

b. Separately, Rumble failed to produce evidence that it *actually relied* on *any* of the alleged affirmative misrepresentations by Google. This is an independent basis for affirmance on the first element of fraudulent concealment. Rumble did not produce a shred of evidence below that Rumble even was *aware* of these statements during the limitations period, let alone that Rumble relied on them in failing to bring suit.

This is fatal to Rumble's argument. "[F]raudulent concealment focuses primarily on the actions taken by the defendant in preventing a plaintiff from

---

[21] Rumble argues that *Conmar Corp.* requires a different result because the Court there held that a plaintiff could reasonably rely on public statements from a defendant company's executive. Br. 61. The statements there were made to the press to refute allegations in an affidavit filed by a U.S. government customs agent in support of a warrant application. 858 F.2d at 500–01. Such specific, public statements made in the context of a government investigation are hardly akin to generally applicable statements in Google internal policies. While the former may constitute an "affirmative act" to mislead, the latter does not, absent evidence of pretextual motivations. *See Garrison*, 159 F. Supp. 3d at 1078–81; *Ryan*, 147 F. Supp. 3d at 891–93.

filing suit including the plaintiff's *actual and reasonable reliance* on the defendant's conduct or representations." *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1121 (9th Cir. 2006) (emphasis added). Because Rumble identified no such evidence, this is an independent reason that Rumble's assertion of fraudulent concealment fails.

In sum, for multiple reasons, Rumble failed to demonstrate a triable issue on the first element of fraudulent concealment.

### 3. Rumble Also Failed to Present Evidence of a Triable Issue on the Second Element of Fraudulent Concealment.

Separate from demonstrating that Google affirmatively misled Rumble, Rumble also bore the burden of demonstrating a triable issue on the second essential element of fraudulent concealment: that Rumble "had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Conmar Corp.*, 858 F.2d at 502. But Rumble failed to bring forth *any* such evidence as to either its lack of knowledge or the diligence it was required to exhibit. This failure, too, independently supports affirmance.

In fact, the evidence in the record *undercuts* any assertion by Rumble that it "had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Conmar*

*Corp.*, 858 F.2d at 502. In the summary judgment record was testimony from Rumble's own CEO asserting that "[b]y 2013" he noticed "immediately" after starting Rumble that "all the search traffic stopped coming to" Rumble's website. SER-11–12. That is no different than *Rutledge*, where the plaintiff's own expression of suspicions about the defendant's conduct years before filing a complaint prevented that plaintiff from asserting fraudulent concealment to toll the statute of limitations. *See* 576 F.2d at 250.

A plaintiff cannot rely on fraudulent concealment when it fails to discover its claim despite having "had available all the facts necessary to discover her cause of action with due diligence. The limitations period does not toll simply because a party is ignorant of her cause of action." *Grimmett*, 75 F.3d at 515. Despite the clear testimony of its CEO, Rumble asserts that a 2020 Wall Street Journal article "was when a light bulb went off" and it finally discovered its claim. Br. 12 (quotation marks omitted). But that reporting was based on public information from Google search results that Rumble—or any other user—could have run. 2-ER-273–82. Similarly, the software configurations on Android devices that Rumble complains about (concerning the preload, placement, and deletability of the YouTube app) were observable to anyone who walked into a retail store and purchased such a device.

61

Rumble's failure to exercise due diligence in investigating either of these sets of facts prevents it from asserting fraudulent concealment. *Grimmett*, 75 F.3d at 515. And, more specifically, Rumble's failure to adduce any *evidence* of its due diligence means that it failed to sustain its burden in opposing Google's motion for summary judgment.

For all these reasons, Rumble failed to demonstrate a triable issue on fraudulent concealment—even if it had not waived its ability to assert this exception by failing to plead it in its Complaint.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's grant of summary judgment for Google.

Respectfully submitted,

*/s/ John E. Schmidtlein*

JOHN E. SCHMIDTLEIN
STEPHEN J. FUZESI
JESSE T. CLAY
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, DC 20024*
  *(202) 434-5000*
  *jschmidtlein@wc.com*

COUNSEL FOR APPELLEE GOOGLE LLC

DATED: NOVEMBER 10, 2025

## STATEMENT OF RELATED CASES

Google LLC is unaware of any cases pending before this Court that are related to this action.

/s/ John E. Schmidtlein

JOHN E. SCHMIDTLEIN

*Counsel for Appellee Google LLC*

DATED: November 10, 2025

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

This brief complies with the type-volume limitation of Ninth Circuit Rule 32-1(a) because this brief contains 13,314 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point CenturyExpd font.

*/s/ John E. Schmidtlein*
JOHN E. SCHMIDTLEIN
*Counsel for Appellee Google LLC*

DATED: November 10, 2025